# STATE OF MICHIGAN

# COURT OF APPEALS

TOMRA OF NORTH AMERICA, INC.,

Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

Defendant-Appellee.

FOR PUBLICATION
July 17, 2018

No. 336871
Court of Claims
LC Nos. 16-000118-MT

TOMRA OF NORTH AMERICA, INC.,

Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

Defendant-Appellee.

No. 337663
Court of Claims
LC No. 14-000091-MT

Before: GADOLA, P.J., and K. F. KELLY and RIORDAN, JJ.

K. F. KELLY (*dissenting*.)

I respectfully dissent. Because the machines are not involved in "industrial processing" as that term is defined in MCL 205.54t(7)(a), I would affirm the Court of Claims well-reasoned decision.

The analysis in this case should begin and end with the statutory definition of "industrial processing" as set forth in subsection 54t(7)(a), which provides:

"Industrial processing" means the activity of converting or conditioning tangible personal property by changing the form, composition, quality, combination, or character of the property for ultimate sale at retail or for use in the manufacturing of a product to be ultimately sold at retail. *Industrial processing begins when tangible personal property begins movement from raw materials storage to begin industrial processing and ends when finished goods first come to rest in finished goods inventory storage.* [Emphasis added.]

-1-

"When a statute specifically defines a given term, that definition alone controls." *Haynes v Neshewat*, 477 Mich 29, 35; 729 NW2d 488 (2007). However, rather than focusing on the legislature's definition of "industrial processing" in section 54t(7)(a), the majority mistakenly looks to those activities specifically enumerated in subsection 54t(3). Contrary to the majority's conclusion, subsection 54t(3) does not *expand* the definition specifically set forth in subsection 54t(7)(a). Rather, as the Court of Claims aptly noted, subsection 54t(7)(a) has a temporal requirement that must be met before the activities in subsection 54t(3) are even considered. That is, only after the definition in subsection 54t(7)(a) is met do the activities set forth in subsection 54t(3) have any relevance. Those activities must occur within the statutory defined time period in subsection 54t(7)(a).

The Court of Claims correctly recognized that the machines perform activities before the industrial process begins. The machines may sort, separate, and compress items and, in that regard, some processing necessarily occurs. However, while some processing may occur, the machines do not perform "*industrial* processing" as statutorily defined. Instead, the machines simply facilitate the collection of raw materials. In order to be exempt, the machines must perform an activity at some point after tangible personal property begins movement from raw material storage and before the finished goods first come to rest in inventory. The machines in this case are used *before* the start of the industrial process and, therefore, the equipment is not exempt. Thus, any inspection, quality control, and recycling that the machines perform is irrelevant because those activities take place before the industrial process begins.[1]

The majority erroneously concludes that the Court of Claims made its decision contingent on the existence of raw materials. However, it is clear that the Court of Claims made no such finding. Instead, the Court of Claims appropriately recognized that where, as here, there *is* raw material, then the industrial process begins when tangible personal property begins movement from raw materials storage to begin industrial processing. In so doing, the Court of Claims was faithful to the definition as set forth by our legislature.

I find plaintiff's reliance on *Detroit Edison Co v Dep't of Treasury*, 498 Mich 28; 869 NW2d 810 (2015) unavailing. The focus in the *Detroit Edison* case involved electricity. The issue was not whether there was raw storage, but whether electricity ever "came to rest" in inventory storage. Our Supreme Court concluded "industrial processing of electricity does not become complete until final distribution to the *consumer* because there is simply no point within the electric system at which 'finished goods first come to rest in finished goods inventory storage' before that point." *Id*. at 42. Our Supreme Court further concluded that "the nonexempt activities in MCL 205.94o(6)(b) are in no way within the scope of MCL 205.94o(7)(a), and the exempt activity in MCL 205.94o(7)(a) is in no way within the scope of MCL 205.94o(6)(b)." *Id*.

---

[1] The record does not reflect whether any of these raw materials are ever, in fact, recycled into a finished product. It is just as likely that they will come to rest in a landfill in the United States or abroad. For example, see https://www.nytimes.com/2018/05/29/climate/recycling-landfills-plastic-papers.html; https://www.npr.org/sections/goatsandsoda/2018/06/28/623972937/china-has-refused-to-recycle-the-wests-plastics-what-now.

at 45. Therefore, as applied to the statutes at issue here, once there is industrial processing as defined in 54t(7)(a), the exclusions set forth in 54t(6) no longer apply. The only premise that *Detroit Edison* confirmed was that subsection 54t(6) does not modify the definition in subsection 54t(7)(a). Again, the Court of Claims did not rely on subsection 54t(6), which excluded storage of raw material as an industrial activity, and relied exclusively on the statutory definition of industrial process in subsection 54t(7)(a).

Because the machines perform activities that occur before an industrial process begins, I would affirm.

/s/ Kirsten Frank Kelly